**STATE, ex rel. GIAMARCO, Plaintiff, v. SMITH et, Defendant.**

Common Pleas Court, Franklin County.

No. 197337.   Decided July 7, 1958.

Richard C. Addison, Ralph G. Smith, for State of Ohio, ex rel. Giamarco.
William B. Saxbe, Atty. Genl., for defendants-respondents.

### OPINION

By SATER, J.

Relator Giamarco is a citizen of Ohio, a taxpayer, an assistant fire chief in Clinton Township of Franklin County, and a member of the Ohio State Firemen's Association, Inc., at whose behest he has brought this

action; giving relator the benefit of every doubt, we will proceed on the assumption that this action is brought for his individual benefit, for the benefit of all members of the Association of which he is a member and that there is present a public interest beyond that of those for whom he is here immediately speaking. Respondents are the members of the Civil Service Commission of the State of Ohio. The relief sought is a writ of mandamus requiring respondents to prepare and hold competitive examinations for the positions of the twenty-six fire inspectors (none of whom admittedly have ever taken a civil service examination for their positions) in the bureau of inspection in the office of the state fire marshal who, in turn, is part of the state department of commerce.

In June, 1954, the Firemen's Association by resolution petitioned the commission to hold such examination. By formal action in July, 1956, the commission determined that competitive examinations are practicable for these twenty-six positions and that on and after February 1, 1957, those positions should be in the competitive classified civil service. But in January, 1957, the commission with equal formality rescinded its action of July, 1956, primarily to "await the pleasure of the 102nd Ohio General Assembly" which was then in session. That Assembly, having enacted no legislation in the premises, this litigation was instituted.

From the foregoing, two questions arise:

1. Are these twenty-six positions in the competitive classified civil service?

2. If they are, is this proceeding the proper vehicle to compel the preparation and giving of competitive examinations for these twenty-six positions?

These two questions will be taken in the stated order, but two controlling matters should be noted in limine. First, if the first question is answered in the negative, the second question falls of its own weight. Second, if the twenty-six positions are not actually in the competitive classified civil service, no action by the commission, no matter how formal, can place them there. See §143.09 **H R. C.** That will be a matter for the legislature, and not for the commission or this Court. We now proceed with the first question.

Dates, as well as statutes, are in this case controlling. In June, 1954, relator and his Firemen's Association sought respondents' help. Two years later, after many conferences and much consideration respondent commissioners gave a favorable answer by formal action in July, 1956. Six months later, in January, 1957, respondents rescinded their favorable action. Did that rescission justify this present action? Or, put differently, are these twenty-six positions in the competitive classified service? Whichever way this question is framed, the answer is in the negative; the reason is that the statutes controlling this case exempt these twenty-six positions from civil service status, especially because those statutes all antedate the actions and negotiations between the parties to his litigation.

The posiion of state fire marshal goes back to the days of the Revised Statutes of Ohio. The start of its modern form is found in 95 Ohio Session Laws, 471, covering the year 1902. Eleven years later in 1913,

the Civil Service Act was passed in 103 Ohio Session Laws, 698; this was the forerunner of §§143.01 and 143.08 R. C. Sec. 143.09 R. C., with all of its classifications did not come into full bloom until 1949-50, but even this was four years prior to relator's resolution. 123 Ohio Session Laws, 862. In 1921, in 109 Ohio Session Laws, 105, 106, 109, there came into being the counterparts of §§121.04 and 121.14 R. C.

The material parts of §121.04 R. C. (§154-6 GC), read,

"Offices are created within the several departments as follows:
"* * *

"In the department of commerce, Superintendent of building and loan associations, Fire Marshal."

The material parts of §121.14 R. C. (§154-19 GC), is its second paragraph and reads as follows:

"All offices created by §§121.04 and 121.05 R. C., shall be in the unclassified civil service of the state."

This same 109 Ohio Session Laws also created the State's department of commerce in 1921 and into that department it placed six divisions on sub-departments; division of banks and banking, division of building and loan associations, division of insurance, the public utilities commission, division of securities, and the fire marshal. Of these six divisions or sub-departments, four existed prior to the creation of the department of commerce; division of building and loan associations, the public utilities commission, division of securities, and the fire marshal. Three were prior to even the Civil Service Act of 1913; division of building and loan associations, public utilities commission, and the fire marshal.

Thus, when it created the department of commerce in 1921, the General Assembly was extremely selective with regard to civil service coverage. From that department's subdivisions it carefully lifted two, the office of the superintendent of building and loan associations and the office of fire marshal from classified civil service status even though they both antedated the Civil Service Act of 1913; and at the same time it left under the classified civil service status all four of the other divisions and commissions, regardless whether or not they antedated that Civil Service Act. This was not accidental; it could not be. Though we do not have the facilities to discover or fathom the reason for the General Assembly's selectivity, there can be no question that a reason existed. Furthermore, it can no more be said that the words "Fire marshal" in §121.04 R. C., allude solely to an individual than it can be said of the words "Superintendent of building and loan associations"; the key lies not in what seems to be the designation of two separate individuals but rather in the word "offices" which not only appears in the first line of §121.04 R. C., but is also repeated, see above, in §121.14 R. C. The entire personnel of these two offices were deliberately exempted from classified civil service. Were it otherwise, the second paragraph of §121.14 R. C., quoted immediately below, would be automatically nullified and the action of chairman Willard Campbell's Code revision committee would stand guilty of the gross and inexcusable error of having deleted the wrong sentence,

This conclusion is confirmed by the fact that in its original form, §121.14 R. C. (§154-19 GC), read:

"Each department may employ, subject to the civil service laws in force at the time the employment is made, the necessary employees, and, if the rate of compensation is not otherwise fixed by law, fix their compensation. Nothing in this chapter shall be construed to amend, modify or repeal the civil service laws of the state except as herein provided."

To this was later added the paragraph quoted above,

"All offices created by §§121.04 and 121.05 R. C., shall be in the unclassified civil service of the state."

Finally, with the adoption of the Revised Code, effective October 1, 1953, the second of the three sentences just quoted was finally deleted; it was long since then obsolete surplusage in view of the last quoted sentence. This deletion was eight months prior to the Firemen's Association's resolution and action of June, 1954.

Further confirmation of the civil service status of the fire marshal's office is found in 122 Ohio Session Laws, 718-719 which in 1947 created the three subdivisions of the fire marshal's office in §§3737.02, 3737.03 and 3737.04 R. C. (Secs. 820-1, 820-2 and 820-3 GC.) These sections broke down the office of the fire marshal into three then new bureaus: arson (§3737.02 R. C.), bureau of inspection (§3737.03 R. C.), which is the portion here under consideration, and bureau of fire prevention (§3737.04 R. C.). Again, the General Assembly showed and exercised selectivity. The first and third of these bureaus are specifically placed in the classified service of the civil service, but the second, which controls this case, is not.

The third sentence in §3737.02 R. C., creating the arson bureau, says:

"The chief and his deputies shall be in the classified service of the civil service."

The third sentence in §3737.04 R. C., creating the bureau of fire prevention, says:

"The chief shall be in the classified service of the civil service."

No such provision appears in §3737.03 R. C., creating the bureau of inspection. This conceivably negative approach to the status of the twenty-six positions here in question is fortified beyond all doubt and question by positive action of the General Assembly. Senate Bill 179 of the 97th General Assembly is the bill which appears in final enacted form in 122 Ohio Session Laws, 718, above. When first introduced into the General Assembly, its second paragraph pertaining to the bureau of inspection that is now §3737.03 R. C. (§820-2 GC), read,

"The chief shall be a competent engineer or architect, and shall be experienced in the inspection of equipment and property for fire and other hazards. At least one assistant shall be a competent electrician, and at least one assistant shall, by education or experience, be qualified to pass upon the plans and operations of dry cleaning plants and hat cleaning shops, and to consult with and advise persons engaged in such industries. **The chief and his assistants shall be in the competitive class of the classified civil service of Ohio.**"

This last sentence which we emphasized was somewhere, somehow,

lost by legislative action along the line between the introduction of Senate Bill 179 and its final emergence as §3737.03 R. C. (§820-2 GC). By reason of this deletion and by reason of the wording of §§121.04 and 121.14 R. C., all of which took place prior to the first action by either relator or the Firemen's Association, it follows that the first question propounded above, Are these twenty-six positions in the competitive classified civil service? —must be answered in the negative. Although the matter of "spoils system" has been mentioned in connection with the rapid turnover in personnel, a second factor may be equally, if not actually, more, compelling—poor pay.

There is consequently no reason to consider the second question at all. Respondents were fully justified in the 1957 rescission of their earlier action, to await the pleasure of the General Assembly. Respondents could not remake nor revise the action of the General Assembly. Nor may this Court do so. Relator's remedy is with the General Assembly, not in this action or in this Court, by motion or on the merits. It is not pleasant to be confronted with Judge Bartlett's fear of a modern Neronic conflagration; but as was so accurately stated by the commission, the remedy for this fear must "await the pleasure of the legislature."

The petition is dismissed at relator's costs.